```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
CUNO, INC. and MOSHE GERSHENSON,        :
                                        :
                     Plaintiffs,        :  03 Civ. 3076 (MBM)
                                        :
         -against-                      :  OPINION AND ORDER
                                        :
HAYWARD INDUSTRIAL PRODUCTS, INC.,      :
                                        :
                     Defendant.         :
----------------------------------------X
```

APPEARANCES:

ARTHUR DRESNER, ESQ.
(Attorney for Plaintiffs)
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
(212) 521-5400

THOMAS J. GOODWIN, ESQ.
WILLIAM J. HELLER, ESQ.
(Attorneys for Defendant)
MCCARTER & ENGLISH LLP
300 Park Avenue, 18th Floor
New York, NY 10022
(212) 609-6800

MICHAEL B. MUKASEY, U.S.D.J.

Plaintiffs Moshe Gershenson ("Gershenson") and Cuno Incorporated ("Cuno") sues Hayward Industrial Products, Inc. ("Hayward") for infringement of two patents allegedly owned by Gershenson and licensed to Cuno. Hayward moves to dismiss on the basis of a forum selection clause pursuant to Fed. R. Civ. P. 12(b)(3) or alternatively, to transfer the action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404(a) (2000).[1] For the reasons set forth below, the motion to dismiss is granted.

I.

The following relevant facts are either undisputed or presented in the light most favorable to plaintiffs.

---

[1] It is not clear which rule governs motions to dismiss based on enforcement of a forum selection clause. The Second Circuit has left the question open because "there is no existing mechanism with which forum selection enforcement is a perfect fit." New Moon Shipping Co. v. Man B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997) (recounting that such motions have been analyzed under Rules 12(b)(1) (for lack of subject matter jurisdiction), 12(b)(3) (for improper venue), and 12(b)(6) (for failure to state a claim)). Plaintiffs do not contest this procedural issue. Because they submit materials outside the pleadings, I treat Hayward's motion to dismiss based on the forum selection clause under Rule 12(b)(3). See Jockey Int'l, Inc. v. M/V Leverkusen Express, 217 F. Supp.2d 447, 450-51 (S.D.N.Y. 2002); J.B. Harris, Inc. v. Razei Bar Indust., Ltd. 37 F. Supp.2d 186, 188 (E.D.N.Y. 1998) (considering motion under Rule 12(b)(3) based on weight of authority and fact that Second Circuit in New Moon Shipping considered materials beyond the pleadings, which is allowed under Rule 12(b)(3)).

From 1969 to 1977, Gershenson worked for GAF Corporation ("GAF") as a mechanical engineer. (Declaration of Moshe Gershenson ("Gershenson Decl.") ¶ 2) In that capacity, Gershenson was responsible for the design and development of, among other things, filters and filter products. (Id. ¶ 3) On January 31, 1997, GAF terminated Gershenson's employment. (Id. ¶ 5) Gershenson continued working on filter designs by himself and eventually developed a novel filter element assembly for use in liquid filtration systems. (Id. ¶ 6; Declaration of Robert Davis ("Davis Decl.") ¶ 4)

Gershenson then approached Hayward's President, Robert Davis, about the possibility of performing consulting services for Hayward. (Id. ¶ 9) Hayward is a New Jersey corporation that manufactures and sells filtration devices in the United States. (Compl. ¶ 4) Hayward was eager to hire Gershenson as an employee, but Gershenson preferred to begin as a consultant. (Gershenson Decl. ¶ 9)

Hayward's Director of Engineering, Walter Booth, asked Gershenson to sign a non-disclosure agreement in connection with his consulting work for the company. (Id. ¶ 10) In reviewing the agreement, Gershenson was concerned about language stating that he would be an employee of, rather than a consultant, to Hayward. (Id. ¶ 11) He thus wrote the words "Moshe Gershenson, consultant" in a blank field intended to designate his workplace.

2

(Id.)  Gershenson was concerned also about language in the agreement assigning his intellectual property rights to Hayward. (Id.)  He claims that in particular, he wanted to protect his rights in the filter element assembly he had conceived before he tendered his consulting services.  (Id.)

On the other hand, Davis was concerned that the filter design "had been developed by [Gershenson] during the course of his employment with GAF [] and that GAF [] may have the rights to the invention."  (Declaration of Robert Davis in Further Supp. of Hayward's Mot. to Dismiss ("Second Davis Decl.") ¶ 3)  Gershenson replied that although he had conceived the design while he was employed at GAF, he developed it "on his own time."  (Id. ¶ 4)  "Having no reason to question the veracity of Mr. Gershenson's statement," Davis signed the agreement.  (Id. ¶ 5)

The executed copy of the non-disclosure agreement, dated February 10, 1997, provided, in relevant part:

> 3.  [Gershenson] hereby agrees to assign to the Corporation the entire right, title and interest in and to any and all inventions, trade secrets, improvements, plans and specifications: (i) which he/she alone, or in conjunction with others, may make, conceive or develop; and (ii) which relate to or derive from any subject matter or problem with respect to which the undersigned shall have become informed by reason of his/her relations with the Corporation or any Affiliate, or to any product or process involved in the business of the Corporation or any Affiliate.
>
> . . .

> 11. Any actions, claims or lawsuits (whether in law or equity) arising out of or relating to this contract, shall be brought only in courts located in the State of New Jersey and shall be governed <u>and enforced</u> by the laws of the State of New Jersey. New Jersey shall be the sole and exclusive forum for the resolution of all disputes arising under or relating to this Agreement. The employee hereby consents to the jurisdiction of the State and/or Federal District Courts of New Jersey.

(2/10/97 Non-disclosure Agreement, Gershenson Decl. Ex. 1 (hereinafter, the "Non-disclosure Agreement")) (emphasis in original)  A separate rider, signed by Hayward and Gershenson and also dated February 10, 1997, provided as follows:

> Paragraph 3 of the Non Disclosure Agreement is modified to add the following language:
>
> However it is understood and agreed that, as to any ideas for inventions, trade secrets, improvements, plans and specifications which have been entirely conceived (though not yet reduced to prototype) prior to his employment with Hayward, [Gershenson] shall retain the right to any such inventions, trade secrets, improvements, plans and specifications.

(Rider to Non-disclosure Agreement ("Rider"), Gershenson Decl. Ex. 1)

Gershenson worked as a consultant to Hayward until January 1, 1998, when he became a full-time employee of the company. (Gershenson Decl. ¶ 13)

On September 2, 1997, while working as a consultant to Hayward and after signing the Non-disclosure Agreement, Gershenson filed a provisional patent application for the filter

4

design.  (Id. ¶ 14; Davis Decl. ¶ 7; Ex. A to Declaration of Sanjiv Chokshi ("Chokshi Decl."))  After filing the application, Gershenson discussed with Davis the possibility that Hayward would manufacture and sell the filter element assembly.  (Gershenson Decl. ¶ 14)  However, before disclosing the details of the design to Hayward, Gershenson asked the company to sign a letter agreement.  (Id. ¶ 15)  Davis signed the agreement and dated it September 5, 1997 (9/5/97 Letter Agreement, Gershenson Decl. Ex. 2 (hereinafter, the "September 1997 Agreement")).  The September 1997 Agreement stated that Gershenson

> would like to disclose the features and
> advantages of my invention to [Hayward]
> solely for [its] evaluation and consideration
> of a possible business arrangement between us
> that would provide [Hayward] the opportunity
> and rights to make and sell this filter
> element assembly.

(Id.)  It further provided that, "as a condition of [Gershenson's] disclosing the confidential details of [his] invention to [Hayward], and in consideration of the opportunity for [Hayward] to make such evaluation, . . . the Information shall not be used by [Hayward] except for the purpose described above."  (Id.)  When Davis signed the September 1997 Letter Agreement, he stated that Hayward would evaluate the new filter design and inform Gershenson if the company wanted to acquire the right to market it.  (Gershenson Decl. ¶ 18)

In October 1999, Hayward purchased all outstanding stock of GAF's subsidiaries involved in the business of "certain liquid filtration systems." (Second Davis Decl. ¶ 2)

On February 29, 2000, the United States Patent and Trademark Office ("USPTO") awarded Gershenson Patent Number 6,030,531, entitled Filter Element Assembly (the "'531 Patent"). (Compl. ¶ 8; Gershenson Decl. ¶ 18) The '531 Patent evolved from the provisional patent application that Gershenson had filed on September 2, 1997. (Chokshi Decl. ¶ 2; U.S. Patent Number 6,030,531, Compl. Ex. A at 1) Gershenson gave Davis a copy of the '531 Patent and asked him whether Hayward had any interest in the new filter design. (Gershenson Decl. ¶ 19) Almost one year later, Davis sent Gershenson a letter agreement, dated January 29, 2001, which made reference to an earlier proposal by Hayward to "continue the financial support of completing the current in-process work for the development of your filter bag design U.S. Patent Number 6,030,531." (1/29/01 Letter Agreement, Gershenson Decl. Ex. 3 (hereinafter "January 2001 Agreement") at 1; Gershenson Decl. ¶ 20) The January 2001 Agreement contained various details about Hayward's efforts to help develop Gershenson's filter element assembly. (January 2001 Agreement at 1-2) It further stated:

> On or about April 1, 2001, Hayward [ ] will have reached a conclusion of considering the pursuit of fully marketing this product as a Hayward [ ] product.

6

> Should Hayward [ ] decide to market this
> product as a Hayward product, a licensing
> agreement allowing Hayward to produce and
> sell this product will be submitted to you
> for your approval.

(Id.) Hayward and Gershenson never entered into "any agreement under which Hayward would be allowed to produce and sell [the] filter design." (Gershenson Decl. ¶ 22)

On May 29, 2001, the USPTO awarded Gershenson Patent Number 6,238,560, entitled "Collapsible Filter Assembly" (the "'560 Patent"). The '560 Patent, like the '531 Patent, evolved from the provisional patent application that Gershenson filed on September 2, 1997. (Compl. ¶¶ 8, 9; Chokshi Decl. ¶ 2; U.S. Patent Number 6,238,560, Compl. Ex. B, at 1)

Plaintiffs claim that Cuno, a Connecticut corporation that designs, manufactures, and markets filtration products, is the exclusive licensee of the disputed patents. (Compl. ¶¶ 2, 10) Gershenson believes "that Hayward has a manufacturing facility for the infringing product in North Carolina." (Gershenson Decl. ¶ 23)

On May 1, 2003, Gershenson and Cuno sued Hayward for patent infringement, alleging that Hayward "is making, using, offering to sell and/or selling . . . filtration products, including but not limited to the Hayflow® Filtration System" that infringe their rights in the '531 and '560 Patents. (Compl. ¶ 12) They seek damages and injunctive relief.

7

II.

Hayward moves to dismiss based on enforcement of the forum selection clause contained in the Non-disclosure Agreement.[2] Plaintiffs argue that the forum selection clause is inapplicable because: (1) their claims are purely for patent infringement and do not arise out of the Non-disclosure Agreement; and (2) Hayward proffers no evidence that it owns the disputed patents.

At this stage, the critical issue between the parties is whether Gershenson conveyed, intentionally or otherwise, the rights to what eventually became the '531 and '560 Patents. Because the invention "was a work of progress from its initial inception . . . to the filing date of the Final Application on July 14, 1998," Hayward contends that "it is not possible that Gershenson could have 'conceived of and perfected' the Invention prior to executing the Agreement" on February 10, 1997. (Hayward

---

[2] On its face, the forum selection clause is mandatory rather than permissive; the language plainly states "'the parties' intent to make jurisdiction exclusive.'" John Boutari & Son v. Attiki Importers, 22 F.3d 51, 52-53 (2d Cir. 1994) (quoting Docksider, Ltd. v. Sea Tech., Ltd., 875 F.2d 762, 764 (9th Cir. 1989)). Therefore, if the clause is found to encompass the claims in this action, the claims must be dismissed under Rule 12(b)(3) absent a clear showing from plaintiffs that "enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); see New Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 24, 29 (2d Cir. 1997). Plaintiffs do not challenge the reasonableness, fairness, or validity of the forum selection clause.

Reply at 9) Hayward points to discrepancies between the Provisional Application and Final Application submitted by Gershenson to the USPTO in asserting that Gershenson did not provide the USPTO "with all of the required information relating to the Invention" until several months into his relationship with Hayward. (Hayward Reply at 9) Hence, under the Non-Disclosure Agreement, Hayward argues that it owns the rights to the patented designs.

Plaintiffs respond that without evidence "that Mr. Gershenson conceived of the new filter design after signing the [] Non-disclosure Agreement or beginning his employment with Hayward," the Rider excludes the filter design from the scope of the Non-disclosure Agreement. (Pls.' Opp'n at 12) They point also to the September 1997 and January 2001 Agreements, which contemplate "separate business arrangements [that] would have to be made if [Hayward] desired rights to make and sell the new filter design" covered by the disputed patents. (<u>Id.</u> at 13) Hence, according to plaintiffs, "[i]t is inconceivable that [Hayward] would have entered into those two additional agreements" if it already owned the patents pursuant to the first Non-disclosure Agreement. (<u>Id.</u>) Hayward responds that it was not until its analysis of the Provisional and Final Applications for the patents that it realized Gershenson "could not possibly

9

have conceived of and perfected the Invention" before the execution of the first agreement. (Hayward Reply at 10)

It should be noted first that under the Rider, Gershenson need not have "conceived and perfected" the design before signing the Non-disclosure Agreement in order to have retained the rights to it. Instead, he retains the right to items which have been conceived "though not yet reduced to prototype" before his employment with Hayward. (Rider) Regardless, it is because of both parties' reliance on language from both the main Agreement and the Rider that the forum selection clause applies to this dispute. It is true that plaintiffs do not mention the Non-disclosure Agreement in their complaint. More telling, however, is plaintiffs' response to the instant motion, in which they rely on the Rider as the source of retained rights in the disputed patents. (Pls.' Opp'n at 12) "A forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship." Anselmo v. Univision Station Group, Inc., No. 92-1471, 1993 WL 17173, at *2 (S.D.N.Y. Jan. 15, 1993) (quoting Bense v. Interstate Battery Sys., 683 F.2d 718, 720 (2d Cir. 1982)); see also Hugel v. Corp. of Lloyd's, 999 F.2d 206, 209 (7th Cir. 1993) ("where the relationship between the parties is contractual, the pleading of

10

alternative non-contractual theories of liability should not prevent enforcement of such a bargain [as to the appropriate forum for litigation])(quoting Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983)). The rule has been extended to tort and other claims that

> ultimately depend on the existence of a contractual relationship between the parties, or if resolution of the claims relates to interpretation of the contract, or if the [] claims involve the same operative facts as a parallel claim for breach of contract. Regardless of the differences in terminology, one common thread running through these various formulations is the inquiry whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to the contractual relationship.

Direct Mail Prod. Serv. Ltd. v. MBNA Corp., No. 99-10550, 2000 WL 1277597, at *6 (S.D.N.Y. Sept. 7, 2000) (citations omitted); see also Brennen v. Phyto-Riker Pharm., Ltd., No. 01-11815, 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002).

Also, where the forum selection clause is written broadly, as it is here, claims beyond those alleging breaches of the contract that contains the clause are covered. Where a clause applies by its terms to "any suits or causes of action directly or indirectly from this AGREEMENT," the Second Circuit has ruled that the clause encompasses a federal antitrust claim premised on allegations that the defendant had terminated the contract because plaintiff had refused to participate in a price-fixing plan. Bense, 683 F.2d at 720; see also Roby v. Corp. of

11

Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993) (forum selection clause applicable to claims "arising out of" contractual relationship was "not restricted to pure breaches of the contracts containing the clauses" but also covered related securities and antitrust claims). Similarly, the Supreme Court in <u>Scherk</u> v. <u>Alberto-Culver Co.</u>, 417 U.S. 506, 519-20 (1974), held that a arbitration provision covering all controversies and claims "arising out of" a contract for the sale of a business governed securities law violations related to that sale.

Before any patent infringement claim is decided, it must be determined whether the patents that plaintiffs claim Hayward is infringing are the same rights that plaintiffs transferred to Hayward by the terms of the Non-disclosure Agreement or ones that remained with Gershenson pursuant to the Rider. There remain factual disputes as to whether Gershenson "conceived or developed" the designs underlying the patents before or after execution of the Non-disclosure Agreement. The September 1997 and January 2001 Agreement bear on the closely related issue of how much information the parties had regarding the filter design and its development at the time they signed the Non-disclosure Agreement. The Non-disclosure Agreement manifests the clear intent of the parties that such a dispute should be resolved in New Jersey.

12

Plaintiffs rely on Corcovado Music Corp. v. Hollis Music, Inc., 981 F.2d 679 (2d Cir. 1993), to argue that where the claim at issue is one for patent infringement rather than for breach of contract, a forum selection clause in a contract transferring ownership rights need not be honored. More on point with the facts in this case is Warner & Swasey Co. v. Salvagnini Transferica S.p.A., 633 F. Supp. 1209 (W.D.N.Y.), aff'd, 806 F.2d 1045 (Fed. Cir. 1986). See also Corcovado, 981 F.2d at 682 (where Second Circuit specifically distinguished Warner & Swasey from the copyright claims at issue in Corcovado). The Federal Circuit in Warner & Swasey held that a forum selection clause in a licensing agreement applied to "an action for breach of contract masquerading as patent infringement." Corcovado, 981 F.3d at 682 (describing Warner & Swasey). Moreover, unlike in Corcovado, the suit was between the same two parties who agreed to the forum selection clause and "centered on the interpretation of the document containing that clause." Id. The Federal Circuit held that "[a]lthough the cause of action pleaded is patent infringement, this action is ultimately based on alleged breach of the licensing agreement by the defendants." 633 F. Supp. at 1211.

The forum selection clause is enforceable against Cuno as well. "[I]t is well established that 'a range of transaction participants, parties and non-parties, should benefit from and be

13

subject to forum selection clauses.'" Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F. Supp. 483, 485-486 (W.D.N.Y. 1997) (quoting Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc., 949 F. Supp. 1427, 1434 (N.D.Cal. 1997)). "In order to bind a non-party to a forum selection clause, the party must be 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." Nanopierce Tech., Inc. v. Southridge Capital Mgmt., No. 02-0767, 2003 WL 22882137, at *5 (S.D.N.Y. Dec. 4, 2003) (quoting Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)). A non-party is "closely related" to a dispute if its interests are "completely derivative" of and "directly related to, if not predicated upon" the signatory party's interests or conduct. Lipcon, 148 F.3d at 1299 (11th Cir. 1998) (quoting Dayhoff, Inc. v. H.J. Heinz Co., 86 F.2d 1287, 1297 (3d Cir. 1996)). Such is the case here with Cuno, whose rights as licensee of the disputed patents are derivative of and depend on Gershenson's rights under the Non-disclosure Agreement.

III.

The remaining question is whether the forum selection clause, combined with other facts in this case, favors dismissal under Fed. R. Civ. P. 12(b)(3) or transfer to another federal district court under 28 U.S.C. § 1404(a).

In determining whether to dismiss or transfer a case, the court must weigh which is the more efficient and just means of enforcing the forum selection clause. See Licensed Practical Nurses, Technicians & Health Care Workers of New York, Inc. v. Ulysses Cruises, Inc., 131 F. Supp.2d 393, 409 (S.D.N.Y. 2000). The clause in this case permits suit in both New Jersey federal district court and in the New Jersey state courts. Where a forum selection clause allows such a choice, courts in this district have dismissed the case in lieu of transfer. See, e.g., GMAC Commercial Credit, LLC v. Dillard Dept. Stores, Inc., 198 F.R.D. 402, 409 (S.D.N.Y. 2001); HNY Assoc., LLC v. Summit Resort Properties, Inc., No. 01-428, 2001 WL 456250, at *3 (S.D.N.Y. Apr. 30, 2001) (citing cases). Dismissal in these cases was appropriate because transfer to the federal district court would have "depriv[ed] plaintiff of its right under the forum selection clause of [the] contract to bring suit in either state or federal court." GMAC Commercial Credit, 198 F.R.D. at 409 (emphasis in original).

However, this rationale does not apply here because plaintiffs bring federal claims for patent infringement, which lie within the exclusive jurisdiction of the federal courts. See 28 U.S.C. § 1338(a). Hence, the hypothetical availability of New Jersey state court does not present an issue.

15

Instead of dismissing the case and forcing plaintiffs to re-file their complaint in the District of New Jersey, transfer presents a more sensible option for enforcing the forum selection clause. As an initial matter, venue in the District of New Jersey is proper because Hayward is incorporated and has its principal place of business in New Jersey. See 28 U.S.C. § 1400(b) (federal patent infringement claims may be brought "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business").

Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). In the context of Section 1404(a), the general rule is that forum selection clauses are enforced, see Weiss v. Columbia Pictures Television, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992), unless it can be shown that enforcement "would be unreasonable and unjust, or that the clause is otherwise invalid for such reasons as fraud or overreaching." Bense, 683 F.2d at 721-22. Also, "once a mandatory forum selection clause is deemed valid, the burden shifts to the plaintiff to demonstrate exceptional facts explaining why he should be

relieved from his contractual duty." Weiss, 801 F. Supp. at 1278.

Plaintiffs fail to show why the District of New Jersey would be inconvenient to the parties and material witnesses, how access to proof would be affected, or how "the interest of justice" would be compromised by transfer of the case to the District of New Jersey. If anything, the facts militate in favor of transfer to New Jersey. Gershenson, although now domiciled in New York, worked for GAF in New Jersey for over 30 years and neither he nor Cuno has demonstrated that litigating in New Jersey would be inconvenient. Both Hayward and GAF are headquartered in New Jersey and it appears that New Jersey would be the more convenient venue for access to proof and witnesses.

Hence, plaintiffs have failed to demonstrate "exceptional circumstances" that would require relief from their contractual burden, and the forum selection clause, as agreed to by the parties, should control. Because transfer is the more efficient and just means of enforcing the forum selection clause here, the Clerk will transfer this case to the District of New Jersey.

* * *

For the reasons set forth above, the Clerk is directed to transfer this case to the District of New Jersey.

SO ORDERED:

Dated: New York, New York
May 11, 2005

Michael B. Mukasey
U.S. District Judge